UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JONES STEPHENS CORP,** | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| v. | ] CIVIL ACTION NO. |
| | ] 2:17-CV-00748-KOB |
| **COASTAL NINGBO HARDWARE** | ] |
| **MANUFACTURING CO., LTD, et** | ] |
| **al.,** | ] |
| | ] |
| Defendants. | ] |

## MEMORANDUM OPINION

Despite the tangled web of insurance coverage in this case, a relatively simple question comes before the court: for which torts are Defendants plausibly liable for allegedly incorporating a void exclusion into liability insurance policies?

Defendants Great American E&S Insurance Co., New Century Insurance Services, Inc., and AmWINS Insurance Brokerage of California, LLC filed Rule 12(b)(6) motions to dismiss five of nine counts in Plaintiff Jones Stephens's amended complaint. (Docs. 75, 95, and 96, respectively).[1] Defendants contend that Jones Stephens has not alleged that they plausibly committed the torts of civil conspiracy, negligence or wantonness, or tortious interference with contract by

---

[1] Defendant Coastal Ningbo Hardware Manufacturing Co., LTD also filed a motion to dismiss. (Doc. 105). In its motion, Coastal Ningbo raises unique personal jurisdiction, service of process, and Rule 12(b)(6) challenges, so the court will rule on Coastal Ningbo's motion to dismiss separately.

1

allegedly modifying insurance policies to deny coverage to Jones Stephens for products liability claims.

For the following reasons, the court will DENY IN PART and GRANT IN PART the motions to dismiss, after which the civil conspiracy claim against all Defendants, the negligence and wantonness claim against Great American, and the several claims the Defendants have not moved to dismiss will remain.

I.     **STANDARD OF REVIEW**

A motion to dismiss challenges the legal sufficiency of a complaint. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant can move to dismiss a complaint for "failure to state a claim upon which relief can be granted." The complaint will survive the motion to dismiss if it alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

For a complaint to be "plausible on its face," it must contain enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And the court accepts as true the factual allegations in the complaint. *Id.*

But not all allegations can defeat a motion to dismiss. "[L]abels and conclusions" and speculation "will not do." *Twombly*, 550 U.S. at 555. So, the court will look only at well-pled *facts*, and if those facts, accepted as true, state a

plausible claim for relief, then the complaint will survive the motion to dismiss. *Iqbal*, 556 U.S. at 678.

## II. FACTS

Jones Stephens, an Alabama corporation, is a wholesale distributor of plumbing products and sells primarily to wholesale resellers. It purchased several products from Coastal Ningbo, a Chinese corporation, from June 2007 to August 2015 and sold those products in the United States.

Jones Stephens required Costal Ningbo to maintain United States general liability insurance policies for the products it sold to Jones Stephens as a condition precedent for Jones Stephens's purchases. Jones Stephens also required Coastal Ningbo to name Jones Stephens as an additional insured party on those insurance policies.

Coastal Ningbo purchased general liability insurance policies for the products it shipped to Jones Stephens from Great American. New Century and AmWINS "were the insurance brokers and agents involved in negotiating the insurance coverage." (Doc. 68 at ¶ 4). From 2007 to 2015, Costal Ningbo periodically sent Jones Stephens updates to its proof of insurance indicating good standing and Jones Stephens's status as an additional insured under the Great American policies.

Jones Stephens also alleges that it and Coastal Ningbo had a written contract

under which Coastal Ningbo agreed to defend and indemnify Jones Stephens against claims arising out of Jones Stephens's distribution of Coastal Ningbo's products.

In August 2015, Jones Stephens stopped buying Coastal Ningbo's products. Then, according to Jones Stephens, Coastal Ningbo repudiated its obligation to defend and indemnify Jones Stephens from liability arising out of Coastal Ningbo's products. (Doc. 68 at ¶ 31). Jones Stephens also alleges that all Defendants worked together to incorporate an exclusion into the Great American insurance policies, made effective retroactively as of the policies' commencement dates, that excluded coverage for claims arising on or after June 26, 2015. (*Id.* at ¶¶ 32–33). According to Jones Stephens, "[t]his exclusion creates inherent ambiguities in the applicable policies, is void as a matter of law, and violates public policy." (*Id.* at ¶ 34). And Jones Stephens alleges that, after incorporating the exclusion, "Great American, counter to its obligation under its policies, without any reasonable basis, and absent any arguable reason, has systematically and continually denied Plaintiff's request for defense and indemnification for claims involving Coastal Ningbo's products." (*Id.* at ¶ 35).

Relying on these factual allegations, Jones Stephens brings nine counts in its amended complaint: (1) declaratory judgment that Great American is obligated to defend and indemnify Jones Stephens; (2) bad faith against Great American for

4

endorsing the exclusion and denying Jones Stephens's claims; (3) breach of contract against Coastal Ningbo for refusing to defend and indemnify Jones Stephens; (4) common law indemnity against Coastal Ningbo for a specific product that it sold to Jones Stephens; (5) civil conspiracy against all Defendants for conspiring to modify the insurance policies; (6) negligence and wantonness against Great American, New Century, and AmWINS for breaching their duty of care owed to Jones Stephens by modifying the insurance policies; (7) negligent failure to procure insurance against New Century and AmWINS; (8) unjust enrichment against Great American, New Century, and AmWINS for the insurance premiums Jones Stephens paid; and (9) tortious interference with contract against all Defendants for depriving Jones Stephens of its contractual rights to defense and indemnification from Coastal Ningbo and Great American.

Great American, New Century, and AmWINS have moved the court to dismiss counts five through nine under Rule 12(b)(6) of the Federal Rules of Civil Procedure. So the court turns next to whether the amended complaint states a plausible claim for relief under those counts.

### III. ANALYSIS

#### A. <u>Count Five - Civil Conspiracy</u>

First, Jones Stephens brings a claim for civil conspiracy against all Defendants, alleging that Defendants "conspired with one another for the issuance

5

of an exclusion that is unlawful and/or which violates public policy." (Doc. 68 at ¶ 78).

To state a claim for civil conspiracy under Alabama law, a plaintiff must allege "a combination between two or more persons to accomplish by concert an unlawful purpose or to accomplish by unlawful means a purpose not itself unlawful." *Webb v. Renfrow*, 453 So. 2d 724, 727 (Ala. 1984) (citing *Barber v. Stephenson*, 69 So. 2d 251 (Ala. 1954)). Fundamentally, "liability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy." *Jones v. BP Oil Co.*, 632 So. 2d 435, 439 (Ala. 1993) (citing *Allied Supply Co. v. Brown*, 585 So. 2d 33 (Ala. 1991), and *Webb v. Renfrow*, 453 So. 2d 724 (Ala. 1984)).

Here, Defendants contend that Jones Stephens has failed to state a claim for civil conspiracy because it has not alleged an underlying wrong that gives rise to a cause of action for conspiracy. The court disagrees.

Jones Stephens alleges the tort of bad faith as the underlying wrong. (*See* Doc. 68 at 12–13, 17–18). Jones Stephens contends that Great American acted in bad faith by manufacturing a reason to deny Jones Stephens's claims with the allegedly void retroactive exclusion. These allegations can support a viable bad faith claim under Alabama law and no Defendant has moved to dismiss the bad faith claim. *See Singleton v. State Farm Fire & Cas. Co.*, 928 So. 2d 280, 283

6

(Ala. 2005) (recognizing bad faith claim against insurer when it, for example, "manufacture[s ] a debatable reason to deny a claim, or [] reli[es] on an ambiguous portion of a policy as a lawful basis for denying a claim") (citing *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 306–07 (Ala.1999)); *Gulf Atl. Life Ins. Co. v. Barnes*, 405 So. 2d 916, 924 (Ala. 1981) ("Bad faith, then, is not simply bad judgment or negligence. It imports a dishonest purpose and means a breach of known duty, i.e., good faith and fair dealing, through some motive of self-interest or ill will."). And Jones Stephens alleges that the Defendants conspired together to draft and incorporate the retroactive exclusion underlying its bad faith claim. (Doc. 68 at ¶¶ 32, 78). So Jones Stephens states a plausible claim for civil conspiracy.

For these reasons, the court will deny Defendants' motions to dismiss count five.

### B. Count Six - Negligence and Wantonness

Next, Jones Stephens alleges that Defendants breached their duties "to exercise reasonable skill, care and diligence in the issuance and modification of policies intended to benefit Plaintiff" and "to provide notice to Plaintiff of any changes or modification to those policies" by "modifying the subject policies and further fail[ing] to provide Plaintiff with the requisite notice of changes to those policies." (Doc. 68 at ¶¶ 84–86).

7

Defendants contend that Jones Stephens has failed to state a claim for negligence and wantonness because Jones Stephens has not alleged a *duty* that any Defendant owed to it. For the following reasons, the court disagrees as to Great American, but agrees as to New Century and AmWINS.

As to Great American, as an insurer, the law imposed on it "a duty . . . to act honestly and in good faith in its dealings with its insured." *Carrier Exp., Inc. v. Home Indem. Co.*, 860 F. Supp. 1465, 1478 (N.D. Ala. 1994). And Jones Stephens alleges that it was an additional insured party under the Great American insurance policies covering Coastal Ningbo's products. So Jones Stephens has sufficiently alleged that Great American owed it the duty of honesty and good faith.

And Jones Stephens has sufficiently alleged that Great American breached that duty. An insurer breaches its duty owed to its insured and is liable for negligence if it "fail[s] to do what a reasonably prudent insurance company would have done under the same or similar circumstances or [does] something which a reasonably prudent insurance company would not have done under the same or similar circumstances . . . ." *Carrier Exp.*, 860 F. Supp. at 1479 (quotation omitted).

And it is liable for wantonness if it breaches that duty with "conscious knowledge" of the probable damages to its insured. *See Mazda Motor Corp. v. Hurst*, --- So. 3d ---, 2017 WL 2888857, at *16 (Ala. July 7, 2017); *see also*

8

*Carrier Exp.*, 860 F. Supp. at 1484 (upholding jury verdict that the insurer's "bad faith conduct was clearly and convincingly established as wanton, oppressive, and malicious" for refusing to settle claims against the insured).

Here, Jones Stephens alleges that Great American incorporated the void retroactive exclusion into its insurance policies to avoid liability for claims against Jones Stephens that Great American would otherwise have to cover. This allegation plausibly states a failure to do what a reasonably prudent insurance company would have done under the same or similar circumstances with knowledge that Jones Stephens would probably be damaged by losing insurance coverage. So Jones Stephens states a plausible claim for negligence and wantonness against Great American.

On the other hand, Jones Stephens alleges no factual basis for New Century's and AmWINS's duty. The amended complaint only vaguely states that "Am[WINS] . . . and New Century . . . were the insurance brokers and agents involved in negotiating the insurance coverage made the basis of this action and negotiating the exclusion which ultimately forms the basis of this action." (Doc. 68 at ¶ 4). Relying *only* on this fact, Jones Stephens reaches the legal conclusion that New Century and AmWINS owed it a duty to exercise reasonable care "in the issuance and modification of policies intended to benefit Plaintiff" and a duty "to provide notice to Plaintiff of any changes or modifications to those policies." (*Id.*

9

at 84–85).

But these conclusory allegations are not facts. Jones Stephens does not allege how New Century and AmWINS were "involved"; how their role involved issuing, modifying, or notifying Jones Stephens; or the existence of any relationship to Jones Stephens. So Jones Stephens leaves the court to speculate as to how New Century and AmWINS owed Jones Stephens any duty. Because speculation cannot defeat a motion to dismiss, the court will grant the motions to dismiss count six as to New Century and AmWINS.

### C.     Count Seven - Negligent/Wanton Procurement

Jones Stephens next alleges that New Century and AmWINS "negligently and/or wantonly failed to exercise reasonable skill, care and diligence when procuring the policies at issue." (Doc. 68 at ¶ 94). This claim fails for the same reason count six against New Century and AmWINS fails: Jones Stephens alleges no factual basis for New Century's or AmWINS's duty.

Alabama law recognizes a specific cause of action against an insurance agent or broker for negligent or wanton procurement of insurance when, "[o]nce the parties have come to an agreement on the procurement of insurance, the agent or broker [fails to] exercise reasonable skill, care, and diligence in effecting coverage." *Montz v. Mead & Charles, Inc.*, 557 So. 2d 1, 4 (Ala. 1987) (quotations and citations omitted). Here, Jones Stephens alleges no agreement—or *any*

relationship—between it and New Century and AmWINS. So, again, Jones Stephens relies only on its conclusory allegation that New Century and AmWINS owed it a duty of reasonable care. Because conclusory allegations cannot defeat a motion to dismiss, the court will grant the motions to dismiss count seven.

### D. Count Eight - Unjust Enrichment

Jones Stephens has stipulated to the dismissal of its unjust enrichment claim, so the court will grant Defendants' motions to dismiss count eight. (*See* Doc. 85 at 10; Doc. 104 at 10).

### E. Count Nine - Tortious Interference With Contract

Finally, Jones Stephens alleges that all Defendants, with the intent to deprive Jones Stephens of its contractual rights and benefits, interfered with two contracts involving Jones Stephens: (1) the Great American insurance policies under which Jones Stephens was an additional insured; and (2) the indemnity agreement between Jones Stephens and Coastal Ningbo. (Doc. 68 at ¶¶ 109–10).

Under Alabama law, to establish a claim for tortious interference with a contract, the plaintiff must prove (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) that "the defendant is independent of or a stranger to the relation or contract"; (4) the defendant's intentional interference with the contract; and (5) damages as a result of the defendant's interference. *MAC East, LLC v. Shoney's*, 535 F.3d 1293, 1297 (11th Cir. 2008).

Under the third element of a tortious interference claim, a defendant is not a stranger to a contract if "the defendant would benefit economically from the alleged injured relations[] or [] both the defendant and the plaintiff are parties to a comprehensive interwoven set of contract[s] or relations." *MAC East*, 535 F.3d at 1297 (quoting *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So. 2d 1143, 1156 (Ala. 2003)).

The Alabama Supreme Court has explained when a non-party to a contract is a "participant" who cannot be considered a stranger to the contract:

> For the sake of clarity, we adopt the term "participant" to describe an individual or entity who is not a party, but who is essential, to the allegedly injured relationship and who cannot be described as a stranger. One cannot be guilty of interference with a contract even if one is not a party to the contract so long as one is a *participant in a business relationship arising from interwoven contractual arrangements that include the contract*. In such an instance, the participant is not a stranger to the business relationship and the interwoven contractual arrangements define the participant's rights and duties with respect to the other individuals or entities in the relationship. If a participant has a *legitimate economic interest in and a legitimate relationship to the contract*, then the participant enjoys a privilege of becoming involved without being accused of interfering with the contract.

*Waddell & Reed*, 875 So. 2d at 1157 (emphasis added). In addition, a non-party that "was involved in creating th[e] relationship" between the parties to a contract "cannot be a stranger to the business relationship." *Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 455 (Ala. 2004).

Here, Jones Stephens's tortious interference claim fails because no

12

Defendant was a stranger to the contracts at issue in this case. For the following reasons, every Defendant had a legitimate economic interest in and a legitimate relationship to the two alleged contracts.

First, as to the Great American insurance policies, New Century and AmWINS allegedly played some part in negotiating those policies and the exclusion incorporated into the policies. And Great American, of course, is a party to the insurance policies. So no Defendant is a stranger to the Great American policies.

Second—as to the alleged indemnity agreement between Jones Stephens and Coastal Ningbo—Great American, New Century, and AmWINS are all part of "a business relationship arising from interwoven contractual arrangements" that includes the indemnity agreement. *See Waddell & Reed*, 875 So. 2d at 1157. New Century and AmWINS "were the insurance brokers and agents involved in negotiating the insurance coverage"; Great American provided the insurance coverage; the insurance policies covered Coastal Ningbo's products sold to Jones Stephens; and the indemnity agreement covered those same products. So, Coastal Ningbo's failure to perform under the indemnity agreement would affect Great American's potential liability under policies negotiated by New Century and AmWINS, and the Defendants allegedly incorporated the exclusion into the policies to avoid potential liability. So each Defendant had a legitimate

13

relationship to and a legitimate interest in the indemnity agreement.

Jones Stephens does not allege any facts showing that any Defendant was a stranger to the Great American insurance policies or the Coastal Ningbo indemnity agreement. So Jones Stephens's tortious interference with contract claim fails as a matter of law and the court will grant the motions to dismiss count nine.

## IV. CONCLUSION

By separate order, the court will **DENY IN PART** and **GRANT IN PART** the motions to dismiss.

Specifically, the court will **DENY** the motions to dismiss as to (1) Count Five for civil conspiracy against Great American, New Century, and AmWINS; and (2) Count Six for negligence and wantonness against Great American.

The court will **GRANT** the motions to dismiss as to (1) Count Six for negligence and wantonness against New Century and AmWINS; (2) Count Seven for negligent and wanton failure to procure insurance against New Century and AmWINS; (3) Count Eight for unjust enrichment against Great American, New Century, and AmWINS; and (4) Count Nine for tortious interference with contract against Great American, New Century, and AmWINS.

**DONE** and **ORDERED** this 1st day of April, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE